NO. 94-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

CAROL J. FACKLER,

     Petitioner and Respondent,

  and

LEO J. FACKLER,

     Respondent and Appellant.

FILED

JUN 20 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

        D. T. Schmidt, Attorney at Law,
        Libby, Montana

     For Respondent:

        Charles A. Harball, Attorney at Law,
        Kalispell, Montana

Submitted on Briefs: April 6, 1995

Decided: June 20, 1995

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Leo Carl Fackler appeals the final decree of dissolution and order issued by the Nineteenth Judicial District Court, Lincoln County. We affirm.

Appellant raises the following issues on appeal:

1. Did the District Court err when it divided the parties' marital estate?

2. Did the District Court err when it denied the parties' motion for a new trial?

Leo Fackler, age 58, has a degenerative bone condition in his back and has been disabled since 1989. He receives disability benefits in the amount of $957 per month. He has a ninth grade education. Until April 1993, he owned and operated a septic service business for over 20 years. He now leases that business for a monthly rate of $1000. Leo acquired various real estate holdings during the years he operated his septic business. He was married twice before his marriage to Carol.

Respondent Carol Fackler is 56 and has health problems related to a heart condition. She has 13 years of formal education. Carol was part owner/operator of a business that failed approximately ten years ago. She has been unemployed since then. She accumulated some real estate from her two prior marriages.

The parties met in 1980. They began a business and personal relationship in 1981 or 1982. Both brought assets and debts into their relationship at its inception. They began cohabiting in

2

**1984.** During this period of the relationship, and throughout their subsequent marriage, both parties contributed assets to individual investments and to joint investments to the extent that their assets became co-mingled. They married on April 9, 1987, and in 1992 moved to Montana. Throughout the course of the marriage, the parties treated all assets as jointly owned. Their primary sources of income were from Leo's septic business and from his investments. There also appeared to be rental income **from** their various real estate holdings. Carol did not work outside the home. They separated in January 1993.

Carol filed her petition for dissolution on February 11, 1993. The dissolution was referred to a Special Master for trial. The Special Master conducted a hearing and reported his findings to the District Court on September 16, 1993. Both parties objected to some portions of the Special Master's report, and on October 12, 1993, the District Court held a hearing to hear the objections. After hearing testimony from both parties, the District Court adopted **most** of the Special Master's recommendations. At the hearing, the parties moved the District Court for a new trial, which was denied. The District Court issued its final decree and order based on the Special Master's report and the October 12 hearing. Appellant argues that the property division in the final decree is inequitable and that the District Court erred when it denied the parties' motion for a new trial.

3

## ISSUE 1

Did the District Court err when it divided the parties' marital estate?

The standard of review regarding property division is whether or not the district court's findings are clearly erroneous. In re Marriage of Maedje (1994), 263 Mont. 262, 265-66, 868 P.2d 580, 583 (citing In re Marriage of McLean/Fleury (1993), 257 Mont. 55, 849 P.2d 1012).

The controlling statute regarding marital estate property division is § 40-4-202(1), MCA, which provides in part:

> In a proceeding for a dissolution of a marriage . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income . . employability, estate, liabilities, and needs of each . . . whether the apportionment is in lieu of . . . maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution . . . of a spouse as a homemaker . . . In dividing property acquired prior to the marriage . . . the court shall consider those other contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

The marital estate has a net value of $398,723. The net worth of Carol's award is $195,323. Leo received the balance of the property for a net worth of $203,400. Each party received some

4

income-producing properties. Leo's septic service business was not included in the marital estate and remains his sole property.

Leo claims that the property distribution is inequitable and that the District Court misapplied the statutory factors of § 40-4-202, MCA. The District Court received conflicting testimony and incomplete evidence regarding which party contributed what amounts to the properties throughout the parties' relationship and subsequent marriage. The parties began their relationship five or six years prior to their marriage. Throughout their relationship and marriage, they each contributed individual assets to joint investments, as well as to their prior individual investments. As a result of this intermingling of investments, funds, and assets, it is virtually impossible to distinguish individual premarital property values from jointly acquired property values. The lack of credible evidence and testimony made it impossible to accurately determine the value of the premarital estate of each party. It was also impracticable to determine the appreciation of premarital assets, or the contributions made by each party to the appreciation of those assets. The District Court noted these difficulties and responded by stating that it could not accurately determine premarital values, and thus, included all of the properties of both parties in the marital estate and distributed them equitably without regard to premarital ownership. It excluded the septic business because Carol offered no testimony or evidence that she had contributed to the business. The District Court considered the

5

age, health, and ability for future acquisition of capital and income of each party when it distributed the marital estate. It also considered the apparent earnings of the parties prior to marriage and the contributions each made to the acquisition and maintenance of assets prior to and during the marriage. The court added that it awarded property to Carol in lieu of maintenance because there was evidence that she would have difficulty enforcing a maintenance award.

An equitable distribution of property is not necessarily equal in value nor is an equally valued distribution necessarily inequitable. District courts have broad discretion when dividing the marital estate. In re Marriage of Binsfield (Mont. 1994), 888 P.2d 889, 893, 52 St. Rep. 16, 19 (citing In re Marriage of Zander (1993), 262 Mont. 215, 221, 864 P.2d 1225, 1229). The apportionment of the marital estate should be equitable when considered as a whole with the surrounding circumstances. Binsfield, 888 P.2d at 893 (citing Zander, 864 P.2d at 1229). If a district court's findings regarding division of the marital estate are not clearly erroneous, and if substantial credible evidence supports the findings and ultimate order, we will not disturb that court's order unless there is an abuse of discretion. Binsfield, 888 P.2d at 893 (citing Maedje, 868 P.2d at 583).

In the current situation, Leo and Carol began a personal and business relationship 11 or 12 years prior to the dissolution. The parties mingled assets and funds prior to their marriage and

considered the properties as jointly owned during their marriage. The parties are two years apart in age and both have health problems. The District Court found Leo to have the ability to acquire capital and to generate income, while it found that Carol had little chance of acquiring capital or generating much income. In the District Court's property division, Leo and Carol both received income-producing and non-income-producing properties. Based on the record, and given the contradictory, incredible testimony and lack of evidence produced, we see no abuse of discretion. We hold that there is substantial credible evidence to support the District Court's findings and that those findings are not clearly erroneous.

Leo makes several other assertions: that Carol does not need maintenance, that Leo's marital contributions greatly exceed Carol's and findings regarding her marital contributions are absent, and that the net worth of Leo's premarital estate substantially exceeded Carol's premarital net worth.

Objections to a special master's report must be made in writing to the other party within ten days after receiving notice of the filing of the report. Rule 53(e)(2), M.R.Civ. P.; In re Marriage of Doolittle (1994), 265 Mont. 168, 172, 875 P.2d 331, 334. Objections not made in that manner to the district court will not be addressed by this Court on appeal. Doolittle, 875 P.2d at 334.

In Leo's written objections to the special master's report, he states that the recommended property division is "unconscionable" and makes reference to a specific item of property. No further objections are made. Leo failed to make further objections at that time in his written objections to the District Court and we will not address those issues.

ISSUE 2

Did the District Court err when it denied the parties' motion for a new trial?

The standard of review in reviewing the denial or grant of a new trial is whether or not the district court manifestly abused its discretion. Baxter v. Archie Cochrane Motors, Inc. (Mont. 1995), 52 St. Rep. 444, 444 (citing Jim's Excavating Service, Inc. v. HKM Associates (1994), 265 Mont. 494, 512, 878 P.2d 248, 259).

Leo claims that the District Court erred when it denied the parties' motion for a new trial at the October 12, 1993, hearing. He claims that neither attorney was prepared for the hearing and that he suffered as a result.

Pursuant to Rule 53, M.R.Civ.P., the District Court adopted portions of the Special Master's report not objected to by the parties. It heard testimony on the parties' objections to the report at the October 12 hearing. At the hearing, it denied the parties' motions for a new trial.

A district court has discretion to grant or deny a new trial and without a showing of an abuse of discretion, we will not

8

disturb its ruling. <u>Baxter</u>, 52 St. Rep. at 444 (citing Jim's Excavating, 878 P.2d at 259). In this instance, we hold that the District Court did not abuse its discretion when it denied the parties' motions for a new trial.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices